393 A.2d 344

**COMMONWEALTH of Pennsylvania**

v.

**Frank PELUSO, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 13, 1978.

Decided Oct. 5, 1978.

William H. Platt, Public Defender, Thomas A. Wallitsch, Allentown, for appellant.

George J. Joseph, Dist. Atty., Stuart T. Shmookler, Lynn H. Cole, Asst. Dist. Attys., Allentown, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Frank Peluso, was convicted in the Court of Common Pleas of Lehigh County by a jury of receiving stolen goods. Post-verdict motions were denied and appellant was fined $750 and placed on probation for three years. The Superior Court affirmed. *Commonwealth v. Peluso*, 240 Pa.Super. 330, 361 A.2d 852 (1976). We granted appellant's petition for allowance of appeal.

The facts are as follows. On January 4, 1972, the residence of Ray Snyder was burglarized and seven rifles were taken.[1] Subsequently, police learned that appellant sold one of the stolen rifles, a .300 magnum Weatherby, to Leslie Nonemaker, who marked the serial number of the rifle on his check stub. Nonemaker requested a receipt; however, appellant retrieved the rifle from Nonemaker's wife and never returned it.

On February 22, 1972, the police obtained a search warrant for appellant's residence. The object of the warrant was to find the seven rifles stolen from the Snyder house. The search, however, proved fruitless. Nonetheless, a criminal complaint was sworn out charging that appellant had received the stolen rifle on January 27, 1972, knowing or having reason to know it was stolen. Appellant was tried in April, 1973 for receiving stolen goods. After presentation of the Commonwealth's case, the trial court sustained appel-

---

1. Four persons were charged with and convicted of burglary. None of the individuals ever named appellant as a receiver of the stolen rifles.

lant's demurrer. The Commonwealth filed an appeal with Superior Court, but subsequently withdrew it.

In September, 1973, appellant's ex-wife, Janet Peluso, and her mother, Lorraine Helvig, took five rifles to the Allentown Police Station. Helvig told police that she found the rifles wrapped in a bed spread underneath the porch of appellant's house. Janet Peluso also told police that on January 27, 1972, John Bonetsky, one of the individuals convicted of the Snyder burglary, sold appellant several rifles. A check of the serial numbers showed that two of the five rifles given the police had been taken in the Snyder burglary.

Appellant was subsequently indicted and charged with receiving stolen goods. He made two pre-trial motions in which he sought to quash the indictments, alleging that the prosecution would violate his right against twice being placed in jeopardy, and to have his ex-wife declared incompetent to testify about statements made during their marriage. The trial court denied both motions.

Appellant argues that the second trial resulting in a conviction should have been barred by the double jeopardy clause of both the United States and Pennsylvania Constitutions. The Commonwealth, however, argues that this issue has been waived because appellant failed to raise it in a pre-trial motion. Our review of the record shows that a hearing on appellant's double jeopardy claim was held prior to the second trial. Collateral estoppel is an integral part of the double jeopardy clause of the Fifth Amendment to the United States Constitution, *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and this appellant, by raising the issue of double jeopardy, necessarily raises the collateral estoppel aspects of the double jeopardy clause. See *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432, vacated, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973) reinstated on remand, 455 Pa. 622, 314 A.2d 854, cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974). As such, we believe appellant has properly preserved the double jeopardy question for appellate review.

Appellant argues that the concept of collateral estoppel barred his second prosecution. We agree.

■ In *Ashe v. Swenson, supra,* the United States Supreme Court held that collateral estoppel was a part of the Fifth Amendment's protection against double jeopardy. In *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Supreme Court made the protection against double jeopardy applicable to the states through the Fourteenth Amendment; therefore, the concept of collateral estoppel, as part of the Fifth Amendment protection, is applicable to the states in criminal prosecutions. *Ashe v. Swenson, supra.*

The Supreme Court stated in *Ashe, supra,* 397 U.S. at 443, 90 S.Ct. at 1194:

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."

In *Ashe,* the defendant was accused of robbing six individuals in a poker game. The defendant was first tried for the robbery of one of the six poker players, but he was acquitted because of inadequate proof that he participated in the robbery. The state then tried and convicted the defendant of the robbery of another of the individuals in the card game. The Supreme Court held that collateral estoppel barred the second trial, as the issue of ultimate fact (the defendant's participation in the robbery) had been decided in the defendant's favor at the first trial.

■ In the instant case, appellant was tried for receiving stolen goods from a January 4, 1972 burglary of the Snyder residence. The 1939 Penal Code provided:

"Whoever buys, has, or receives any goods, chattels, money or securities, or any other matter or thing, which shall have been stolen or feloniously taken, . . . knowing, or having reasonable cause to know the same to

have been stolen or feloniously taken, is guilty of a felony . . . ." Act of June 24, 1939, P.L. 872, § 817, 18 P.S. § 4817, superseded by Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 3925.

To prove the crime of receiving stolen goods, the Commonwealth was required to prove: (1) possession, (2) of a stolen item where the possessor, (3) knew or had reason to know the item was stolen. At the first trial, sufficient evidence was presented to prove that appellant was in possession of a stolen rifle. Thus, the only explanation by which the trial court could have sustained appellant's demurrer was in finding no evidence to prove appellant knew or had reason to know the rifle taken in the January 4 burglary was in fact stolen. This issue of ultimate fact having been determined in appellant's favor, collateral estoppel prevents another trial where the same fact is at issue. Appellant's second trial for receiving stolen goods was barred.

The Commonwealth advances two reasons why the doctrine of collateral estoppel should not be applied to the instant case. The Commonwealth first argues that it did not know of Mrs. Peluso's testimony at the first trial. We do not agree.

The existence of additional evidence at a later trial makes no difference, however, for collateral estoppel analysis. *Wingate v. Wainwright,* 464 F.2d 209 (5th Cir. 1972); *Harris v. Washington,* 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971).

The Commonwealth also argues that collateral estoppel should not prevent the second trial because appellant may have received the rifles at different times. We believe Judge Hoffman clearly resolved this issue in his dissenting opinion in the Superior Court by stating:

"In the first place, the warrant authorizing the search of appellant's residence averred that the police had reason to believe that *all* the guns taken from Mr. Snyder were in appellant's possession. Second, the indictments for *both* prosecutions allege that the stolen items were received on the same date, January 27, 1972. Third, and most impor-

tant, the pre-trial testimony of Janet Peluso completely negates any possibility that appellant received the guns at different times. She stated that John Bonetsky gave appellant all the guns on the evening of January 27, 1972. Thus, all the evidence available to the lower court pointed to the conclusion that the rifles were received at the same time."

We find the Commonwealth's arguments as to the inapplicability of the doctrine of collateral estoppel enunciated in *Ashe v. Swenson, supra,* to be unpersuasive.

Judgment of sentence reversed and appellant is discharged.