470 A.2d 451

**COMMONWEALTH of Pennsylvania**

**v.**

**Robert CRENSHAW, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 24, 1983.

Decided Dec. 29, 1983.

34

Warren Hamilton, Philadelphia (court-appointed), for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Ronald Eisenberg, Marion E. MacIntyre, Deputy Attys. Gen., Philadelphia, for appellee.

Norris E. Gelman, Philadelphia, amicus curiae for NAACP.

Before ROBERTS, C.J., NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

OPINION OF THE COURT

ROBERTS, Chief Justice.

This appeal arises from the trial of appellant Robert Crenshaw in June of 1979 in connection with the stabbing death and robbery of Sara Tiers in her home on July 18, 1976, and the theft of a pocketbook from the home of Carol Havey on July 22, 1976. Appellant was found guilty of murder of the first degree, robbery, and two counts of burglary. Following the jury's verdicts of guilty, a sentence of death was imposed on the verdict of murder of the first degree. Concurrent sentences of ten to twenty years' imprisonment were imposed on the related robbery and burglary verdicts and ordered to run consecutive to the death sentence, and a sentence of five to ten years' imprisonment was imposed on the second burglary verdict and ordered to run consecutive to all other sentences.

At the time of appellant's arrest on August 23, 1976, appellant was also charged with murder, robbery and burglary in connection with the stabbing death of Barbara Coates on July 19, 1976. Upon motion of the Commonwealth, these charges were initially consolidated with the charges which form the basis of this appeal. Subsequently, the court granted a defense motion for severance, and the Commonwealth chose to try appellant first on the charges

relating to Barbara Coates.[1]  On May 17, 1977, following a trial by jury, appellant was found not guilty on all counts.

Trial on the charges relating to Sara Tiers was initially scheduled to commence one week later, on May 24, 1977. Defense counsel, however, requested and was granted a continuance in order to obtain the notes of testimony of the Barbara Coates trial, at which evidence relating to all the offenses with which appellant was charged had been admitted.  Counsel also immediately filed a motion to dismiss the charges relating to Sara Tiers and Carol Havey on double jeopardy grounds, on the theory that evidence of these offenses had already been presented as part of the Commonwealth's case-in-chief in the Barbara Coates trial.  This motion was denied on November 4, 1977.  Subsequent petitions for extensions of time filed by the Commonwealth pursuant to Criminal Procedural Rule 1100(c) were granted, resulting in the postponement of jury selection until October 16, 1978.  Following the voir dire of a forty-five member jury panel on October 16, but prior to the selection of a jury, defense counsel became ill.  He subsequently died in February 1979.  New counsel was appointed to represent appellant, further Commonwealth extensions of time were granted, and jury selection ultimately began again on June 11, 1979, two years and ten months after appellant's arrest.

Immediately prior to the commencement of voir dire on June 11, 1979, the Commonwealth announced for the first time that it would seek the death penalty in this case.  Over defense objection, the court ruled that the case would be considered a capital case, in which the parties would be permitted to question the veniremen concerning the death penalty and would each be permitted to exercise twenty peremptory challenges.  See Pa.R.Crim.P. 1126.

On this appeal appellant renews his claim, raised pre-trial, that trial should not have been permitted to proceed because it allegedly violated the constitutional prohibition

1. The Commonwealth was granted an extension of time for commencement of trial on the other charges pursuant to Criminal Procedural Rule 1100(c).

against double jeopardy. In appellant's view, because he had previously defended against the Commonwealth's evidence when it was introduced at the earlier Barbara Coates trial, at which he was acquitted, he should not have been required to defend against this evidence a second time. In the Barbara Coates trial, evidence of the offenses committed against Sara Tiers and Carol Havey had been introduced by the Commonwealth, over defense objection, as tending to prove that appellant had committed the offenses against Barbara Coates as part of a common plan or scheme.

■ The constitutional prohibition against double jeopardy protects a defendant from being placed twice in jeopardy for the same offense. See generally *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). See also 18 Pa.C.S. § 109. However, where, as here, a defendant is charged with separate offenses, the only protection against successive trials available through the double jeopardy clause of the Fifth Amendment is the right embodied in the rule of collateral estoppel not to have a second trier of fact redetermine those issues *"necessarily determined between the parties in the first proceeding."* *Commonwealth v. Zimmerman*, 498 Pa. 112, 117, 445 A.2d 92, 95 (1981) (emphasis in original). Accord, *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Commonwealth v. Peluso*, 481 Pa. 641, 393 A.2d 344 (1978).

■ Appellant argues that, in finding him not guilty of the offenses against Barbara Coates, the first jury must necessarily have decided that he did not commit the offenses against Sara Tiers and Carol Havey, which were before the jury as part of the Commonwealth's case-in-chief. Appellant's argument is premised on the view that, because the Commonwealth presented all offenses at the first trial as evidence of a common scheme, the jury's verdict of not guilty must necessarily have reflected a finding that appellant was not guilty of any aspect of the scheme. This argument is not supported by the record of the first trial. The Commonwealth presented eyewitness identification tes-

timony placing appellant near the scenes of the offenses against Sara Tiers and Carol Havey, but did not present any similar eyewitness testimony placing appellant at the scene of the offenses against Barbara Coates. Thus the jury could well have concluded that appellant's guilt of the Barbara Coates offenses had not been proven beyond a reasonable doubt, without reaching a similar conclusion as to the other offenses.

Nor can appellant succeed on his theory that, even if the second trial was not barred completely by the first jury's verdict, the Commonwealth was barred from admitting into evidence appellant's confessions to the Sara Tiers and Carol Havey offenses, which, together with a confession to the Barbara Coates offenses, had been admitted at the first trial. There appellant had defended against these confessions, as he did again at the second trial, by alleging that they had been fabricated by police who physically coerced him to sign the incriminating statements. In appellant's view, because the first jury returned a verdict of not guilty, that jury must have believed appellant's testimony that the confessions were coerced, and the Commonwealth should accordingly have been estopped from introducing any of the confessions at a second trial and relitigating the issue of voluntariness.

Appellant's conclusion must be rejected because, as with the evidence relating to an alleged common scheme, it was not necessary for the jury to reach the same determination regarding each of the confessions. Because the jury had to determine appellant's guilt or innocence only for the offenses relating to Barbara Coates, the jury did not need to reach an ultimate determination as to the voluntariness of appellant's confessions to the other crimes. Compare *Ashe v. Swenson,* supra (where defendant was charged with the simultaneous robbery of six persons in a poker game and acquitted at a trial relating to one of the victims, jury's verdict necessarily found that defendant was not one of the robbers, and thus subsequent trial relating to another victim was barred by collateral estoppel). Moreover, the jury may well have found appellant's confessions to be voluntary

by a preponderance of the evidence, see *Commonwealth v. Ewell,* 456 Pa. 589, 319 A.2d 153 (1974), as did the suppression judge at the *Jackson-Denno* hearing, and yet have been unwilling to find appellant guilty beyond a reasonable doubt in the absence of any corroborating evidence directly connecting appellant to the offenses against Barbara Coates.[2]

■ Appellant also challenges the composition of his jury. Appellant, who is black, claims that the prosecution impermissibly exercised its peremptory challenges to strike all black prospective jurors in order to obtain an all-white jury. However, appellant has not established a record in support of his claim. Neither the parties' briefs nor the record reveals the number of blacks on the venire in appellant's case. Moreover, appellant did not establish the race of the veniremen on the record, making it impossible to determine from the record of the voir dire which prospective jurors were black and whether there was a basis other than race for excluding them by peremptory challenge. See *Commonwealth v. Futch,* 492 Pa. 359, 424 A.2d 1231 (1981) (threshold inquiry in any case challenging the exercise of a prosecutor's peremptory challenge is whether the record indicates discrimination in the jury selection of the defendant's own case). See also *Commonwealth v. Henderson,* 497 Pa. 23, 438 A.2d 951 (1981).

Like appellant's challenge to the composition of the jury, appellant's remaining claims of trial error provide no basis for relief. These claims challenge the consolidation of the offenses against Sara Tiers and Carol Havey, the trial court's refusal to permit a particular question on voir dire on the ground that the question was improperly phrased,

2. Nor does the record support appellant's claim that delay in bringing this case to trial constituted a violation of Rule 1100. Although the delay was extraordinary, resulting in trial thirty-four months after appellant's arrest, this delay was occasioned by a combination of legitimate factors, including appellant's successful request for a severance of the Barbara Coates charges, the parties' unavailability for trial during the period of the Barbara Coates trial, appellant's waiver of Rule 1100 while his pretrial motions were pending, his concurrence in extensions of time sought by the Commonwealth, the illness and death of his counsel, and the assignment of new counsel to represent him.

the denial of appellant's motions to suppress his statements and physical evidence seized from his home pursuant to a search warrant, the admissibility of certain identification evidence, alleged prosecutorial misconduct in the closing argument, and the trial court's refusal to give certain requested points for charge in the instructions to the jury. We have carefully considered each of these issues and find them to be without merit on the record.

■ In addition to his allegations of trial error, appellant challenges the application of the death penalty statute enacted on September 13, 1978, to his trial for offenses committed in 1976. He relies upon *Commonwealth v. Story*, 497 Pa. 273, 440 A.2d 488 (1981), which held that the Legislature did not intend the Act of September 13, 1978, to apply to an offense committed prior to its effective date. Appellant further argues that the 1978 statute was unfairly applied in his case because, but for the extraordinary delay of almost three years in bringing him to trial following his arrest in August 1976, see supra at note 2, his trial would have been held prior to the enactment of the 1978 death penalty statute, thereby permitting a maximum sentence of life imprisonment. See *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977), cert. denied, 438 U.S. 914, 98 S.Ct. 3143, 57 L.Ed.2d 1160 (1978) (holding 1974 death penalty statute unconstitutional). The Commonwealth acknowledges that this Court's holding in *Story* requires appellant's death sentence to be vacated, but argues that the death sentence should be affirmed on the ground that *Story* was erroneously decided.[3]

Three months ago, in *Commonwealth v. Truesdale*, 502 Pa. 94, 465 A.2d 606 (1983), this Court unanimously rejected

---

**3.** The Commonwealth relies upon *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), which sustained the application of Florida's revised death penalty law to an offense committed prior to the statute's enactment. In so ruling, the Supreme Court held that changes in the law did not subject the defendant to trial under an *ex post facto* law since the revisions, which changed the forum for determining the death penalty from a jury to a judge acting with an advisory jury and removed the previous presumption in favor of the death penalty, were simply "procedural" or "ameliorative."

a similar argument that *Story* be reconsidered. The Court stated:

> "The Commonwealth's request that *Story* be reconsidered must be rejected, for principles of stare decisis and fundamental fairness, which are of paramount importance in the review of death sentences, manifestly require that the same interpretation of the 1978 death penalty statute be applied in our review of appellant's case as was applied in *Story*."

502 Pa. at 100, 465 A.2d at 608–609. Accord, *Commonwealth v. Williams*, 501 Pa. 292, 461 A.2d 593 (1983) (trial court order holding 1978 death penalty statute inapplicable to trial for 1977 offense affirmed per curiam). Thus, as in the cases of *Story* and *Truesdale*, the sentence of death must be vacated and a life sentence imposed.

The judgment of sentence of death is vacated and a sentence of life imprisonment imposed. The sentences imposed on the verdicts of burglary and robbery are affirmed, and are to run consecutive to the sentence of life imprisonment.

LARSEN, J., files a concurring and dissenting opinion.

Appellant distinguishes *Dobbert* on the ground that Pennsylvania's present death penalty statute, unlike the statute in *Dobbert,* makes the degree of proof at the death penalty hearing more onerous to the defendant than did the prior law. Although under the present statute the defendant may introduce any evidence relevant to the existence of mitigating circumstances and is not limited to an exclusive list of mitigating circumstances as he was under the 1974 statute, the existence of one or more mitigating circumstances is no longer an absolute bar to the imposition of the death penalty as it was under the 1974 statute. That statute provided: "If a murder of the first degree ... is accompanied by at least one of the following mitigating circumstances the person convicted shall be sentenced to life imprisonment." Section 1311(d). Instead, under the 1978 statute, "[t]he verdict must be a sentence of death ... if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances." Section 1311(c)(1)(iv). Accordingly, because the jury found that there were mitigating circumstances in appellant's case and nevertheless returned the death penalty, a result that would have been impermissible under the law in effect at the time the offenses were committed, appellant argues that he has been subjected to an *ex post facto* law under the standard announced in *Dobbert.*

42

LARSEN, Justice, concurring and dissenting.

When appellant robbed and intentionally murdered Sara Tiers on July 18, 1976, he was on notice that the penalty in Pennsylvania for murder of the first degree was death (or life imprisonment). 18 Pa.C.S.A. § 1102. This Court recently discussed the purpose of 18 Pa.C.S.A. § 1102 in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *rearg. denied* (February 7, 1983), *cert. denied* — U.S. —, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). In *Zettlemoyer*, we stated:

> In apparent response to the void. In Pennsylvania law regarding imposition of a death penalty engendered by [*Commonwealth v. Bradley*, 449 Pa. 19, 295 A.2d 842 (1972)] the General Assembly in 1972 adopted section 1102 of the Crimes Code which merely stated "[a] person who has been convicted of murder of the first degree shall be sentenced to death or to a term of life imprisonment." *Commonwealth v. McKenna*, 476 Pa. 428, 435, 383 A.2d 174, 178 (1978). As it was "manifest that in no way could § 1102 have been designed to cure the constitutional infirmities of the Act of 1939 ...", it seemed that "§ 1102 had no purpose other than to provide some legislative authority for the imposition of a death sentence until the General Assembly could formulate an adequate response to the implications of the *Furman* [*v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)] decision." *Id.*

500 Pa. at 39–40, 454 A.2d at 949.

Thus, the legislature has clearly and unambiguously manifested its intention to authorize the death penalty as a permissible punishment for murder of the first degree and has never waivered from that position. It was not the death penalty itself, but rather the *sentencing procedures at which such penalty was imposed*, that ran afoul of the United States Constitution. Accordingly, this Court struck down the Act of March 26, 1974, P.L. 214, No. 6, 18 Pa.C.S.A. § 1311, as violative of the sentencing norms established by the United States Supreme Court in *Furman*

and subsequent decisions. *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977).

In *Commonwealth v. Story*, 497 Pa. 273, 440 A.2d 488 (1981), appellant Stanton Story had first been convicted in 1975 for a murder committed in 1974, and was sentenced to death under then-in-effect 18 Pa.C.S.A. § 1311. On appeal from that conviction and sentence, this Court reversed the conviction and granted Story a new trial. Story was retried in October of 1979, and was again convicted and sentenced to death under the Act of September 13, 1978. Four members of this Court held, over this author's vigorous dissent, (joined by Flaherty and Kauffman, JJ.). that, under these circumstances (i.e., trial, conviction and death sentence under sentencing statute later declared unconstitutional; conviction reversed and new trial granted; retrial, conviction, and death sentence under subsequently enacted valid sentencing statute), the sentence of death imposed pursuant to the Act of September 13, 1978 had to be vacated, and a sentence of life imprisonment was imposed in its stead. In *Commonwealth v. Truesdale*, 502 Pa. 94, 465 A.2d 606 (1983), this author agreed with Chief Justice Roberts that "for principles of stare decisis and fundamental fairness", the sentence of death imposed upon the similarly situated Mack Truesdale had to be vacated under *Story*, and so I joined the *Truesdale* majority. However, I maintain my belief expressed in *Story* that the result and analysis in that case

is not Constitutionally mandated, ignores the reasoning and experience of the United States Supreme Court, *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), implicitly overrules this Court's decision in *Commonwealth v. Kalck*, 239 Pa. 533, 87 A. 61 (1913), and exhibits a marked aversion to common sense. Once again, a majority of this Court has seen fit to exalt form over substance through highly technical manipulations of the law, passed off as "interpretations".

497 Pa. at 282–83, 440 A.2d 488. (Larsen, J. dissenting, joined by Flaherty and Kauffman, JJ.)

44

Neither stare decisis nor fundamental fairness require the result reached today by the majority, which result carries the technicality adopted in *Story* one step further. For purposes of applying the Act of September 13, 1978, appellant Robert Crenshaw is *not* similarly situated to appellants Story and Truesdale. As the United States Supreme Court explicitly stated in *Dobbert v. Florida*, 432 U.S. 282, 301, 97 S.Ct. 2290, 2302, 53 L.Ed.2d 344 (1977), in response to a similar argument:

[P]etitioner is simply not similarly situated to those whose sentences were commuted. He was neither tried nor sentenced prior to *Furman*, as were they, and the only effect of the former statute was to provide sufficient warning of the gravity Florida attached to first-degree murder so as to make the application of this new statute to him consistent with the *Ex Post Facto* Clause of the United States Constitution. Florida obviously had to draw the line at some point between those whose cases had progressed sufficiently far in the legal process as to be governed solely by the old statute, with the concomitant unconstitutionality of its death penalty provision, and those whose cases involved acts which could properly subject them to punishment under the new statute. There is nothing irrational about Florida's decision to relegate petitioner to the latter class, since the new statute was in effect at the time of his trial sentence.

On July 18, 1976, the date on which appellant murdered Sara Tiers, and for the entire period since then, the legislative punishment for murder of the first degree has been set at death or life imprisonment. Due to circumstances beyond the Commonwealth's control, as the majority acknowledges, appellant was not tried until June of 1979 at a time when valid capital punishment sentencing procedures were in effect. *Commonwealth v. Zettlemoyer, supra.* There is *nothing retroactive* about applying sentencing procedures enacted in 1978 to a sentencing proceeding taking place in 1979, *Commonwealth v. Story, supra* at 497 Pa. at 306–07, 440 A.2d 488, *nor* does such a sentence (or sentenc-

ing proceeding) violate the *ex post facto* clauses of the Pennsylvania or United States Constitutions. As this author stated in *Commonwealth v. Story, supra* at 497 Pa. 302–03, 440 A.2d 488:

The Court [in *Dobbert* ] concluded that the changes in the law *were procedural and on the whole ameliorative and that for either of these reasons, there was no ex post facto violation. Dobbert v. Florida, supra* 432 U.S. at 292, 97 S.Ct. at 2297. The evil at which the *ex post facto* proscription aims is simply not present when the change is *merely procedural or where the change was, on the whole, ameliorative (even if substantive).* The evil is the potential for legislatures to direct "arbitrary and oppressive" legislation at individuals. (citation omitted)

In *Dobbert* the Court concluded, 432 U.S. at 293–94, 296–97, 97 S.Ct. at 2298, 2299–2300:

In the case at hand, the change in the statute was clearly procedural. The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime.

. . . .

In this case, not only was the change in the law procedural, it was ameliorative. It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law.

. . . .

[V]iewing the totality of the procedural changes wrought by the new statute, *we conclude that the new statute did not work an onerous application of an ex post facto change in the law. Perhaps the ultimate proof of this fact is that this old statute was held to be violative of the United States Constitution in Donaldson v. Sack, 265 So.2d 499 (Fla.1972), while the new law was upheld by this Court in Proffit, supra.*

(emphasis added.) The majority's half-hearted attempts to distinguish *Dobbert* are unpersuasive. Indeed, the majority

46

does *not* determine that there is any meaningful distinction between appellant's situation and Dobbert's, majority opinion at 454–455, n. 3, for the simple reason that none exists.

Accordingly, I dissent to the vacation of appellant's death sentence and would hold that appellant was properly and fairly sentenced under the Act of September 13, 1978. I concur in the affirmance of appellant's convictions.