J. A02005/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ERVIN SPURIEL, | : | No. 603 EDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, January 11, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0001983-2011

BEFORE:  FORD ELLIOTT, P.J.E., OTT AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:**FILED SEPTEMBER 08, 2014**

Ervin Spuriel appeals from the judgment of sentence entered on January 11, 2013, in the Court of Common Pleas of Philadelphia County following his convictions of first-degree murder, criminal conspiracy, and violating the Uniform Firearms Act ("VUFA").  We affirm.

The facts, as summarized by the trial court, are as follows:

> On July 10, 2010, at approximately 10:18 p.m., Jamal Parker was driving down 21st Street towards Mifflin Street in South Philadelphia.  Mr. Parker saw a friend, Marquis Gilliard, walking down the street, and stopped his car briefly to talk to him.  Mr. Parker then continued driving down the block and got out of the car.  Mr. Parker approached a group of men that included defendant and co-defendant [Chaz] Henry, who had sold drugs for Mr. Parker, along with Andrew Fairey, Antione Smith, and [co-]defendant's brother Devon Henry.  [Co-defendant Henry] called over to Mr. Parker and acted as though he was going

_____

* Retired Senior Judge assigned to the Superior Court.

to give Mr. Parker money. Co-defendant Henry then pulled a gun from his waist and began chasing Mr. Parker, shooting him. Defendant approached Mr. Parker and also shot him, after which Mr. Parker collapsed to the ground. Defendant continued to shoot Mr. Parker in the back after he fell. Defendant, co-defendant Henry, Mr. Henry, Mr. Fairey, and Mr. Smith all fled the scene.

Police arrived and transported Mr. Parker to the University of Pennsylvania Hospital, where he was pronounced dead at 10:28 p.m. He had been shot nine times, once each in the head, neck, arm, hip, buttock, thigh, and leg, and twice in the back. The police recovered 11 fired cartridge casings from the scene, eight of which had been fired from the same .40 caliber handgun and three of which had been fired from the same .45 caliber handgun. Two .40 caliber bullets were recovered from Mr. Parker's jaw and throat, and one .45 caliber bullet was recovered from his back. The weapons used in the shooting were not recovered.

Marquis Gilliard was questioned by homicide detectives. He identified defendant and co-defendant Henry, both of whom he knew personally, as the people who shot and killed Mr. Parker. Mr. Gilliard told police that the murder was over money, as both defendant and co-defendant Henry owed Mr. Parker money for drugs. Devon Henry was also questioned by the police and told police that he had witnessed the shooting. He also told police that defendant and co-defendant Henry had talked to him about the shooting after it happened, and that the murder was committed over drug money that they both owed to Mr. Parker.[1] Detectives questioned David Marks, a friend of Mr. Parker, who told them that on the night

---

[1] At trial, Devon claimed that he could not recall giving a statement to the police and disavowed nearly all of the averments in the statement. (Notes of testimony, 12/18/12 at 109-129.) However, Devon's signed statement was admitted into evidence at trial through the testimony of Detective James Crone. (Notes of testimony, 12/19/12 at 7-22.)

> of the shooting, defendant told him that he had killed Mr. Parker.
>
> Police recovered two cell phones from the scene of the shooting, both of which belonged to Mr. Parker. From one of these phones, they recovered several confrontational text message exchanges between defendant and Mr. Parker, one of which, from defendant, that stated, "After this I'm done. One minute you act like my man then you act like you don't care. I'll give you your dough." Mr. Parker had also called defendant two times immediately prior to the shooting, once at 10:13 p.m. and once at 10:14 p.m. Defendant and co-defendant Henry were arrested.

Trial court opinion, 5/23/13 at 2-4 (citations to the record omitted). The Commonwealth also introduced the testimony of Officer Margaret McGrory concerning her investigation into appellant's sales of crack cocaine; the investigation was still open, and appellant had not been convicted of any crime. (Notes of testimony, 12/19/12 at 75-87.) She detailed six separate purchases orchestrated by a confidential informant, which occurred approximately four months prior to the murder.

At trial, appellant denied any part in the victim's death. He argued the Commonwealth's witnesses were unreliable and averred that they accused him to deflect attention from themselves. Appellant testified that he bought crack in bulk, cooked it, and sold it for profit. (Notes of testimony, 12/20/12 at 141-142.) He denied that he bought crack from Parker and denied that he was in debt to Parker, with the exception of one point in time when he owed Parker $175 for a YMCA membership. (*Id.* at 142-146.) Appellant

claimed that his text to Parker about "[a]ll the fucking bread" he made for him referred to marijuana business he sent to Parker. (*Id.* at 146.) Appellant denied shooting the victim and testified that he was at a cookout a block away from the murder and could not get any of the approximately 15 people who were with him to testify on his behalf. (*Id.* at 163-170.) The parties stipulated that appellant had two prior adjudications of delinquency for *crimen falsi* offenses. (*Id.* at 206.) The parties also stipulated that neither appellant nor co-defendant Henry was licensed to carry a firearm and that co-defendant Henry had been convicted for selling drugs.

Following a jury trial, appellant was convicted of the above-stated charges on December 21, 2012. On January 11, 2013, appellant was sentenced to a mandatory term of life imprisonment for first-degree murder and a cumulative concurrent sentence of 21 to 42 years for the other offenses.[2] This timely appeal followed. The following issues have been presented for our review:

> I.   Did the trial court erroneously permit the Commonwealth to introduce extensive evidence regarding a prior narcotics investigation which resulted in the arrest of Appellant for PWID, where this charge remained open at the time of the instant proceeding and where the prejudicial impact

---

[2] Co-defendant Henry was convicted of the same crimes and sentenced to a mandatory term of life imprisonment for first-degree murder and a cumulative concurrent sentence of 21 to 45 years for the remaining offenses. A panel of this court affirmed the judgment of sentence on direct appeal. *Commonwealth v. Henry*, No. 202 EDA 2013, unpublished memorandum (Pa.Super. filed May 16, 2014).

outweighed the probative value of this detailed description of a month long series of prior bad acts?

II.    Did the trial court erroneously permit the Commonwealth to question witness Marquis Gilliard about "what happens to snitches" and erroneously preclude the defense from cross-examining Gilliard regarding (1) his motive to testify falsely to curry favor with the Commonwealth, (2) whether he sold drugs for the decedent, and (3) whether he was aware of the decedent's propensity for violence?

III.   Did the trial court erroneously sustain the Commonwealth's objection to defense counsel's inquiry into the potentially coercive conditions under which the police questioned witness Fairey, prior to securing a statement from Mr. Fairey that inculpated Appellant?

IV.    Did the Commonwealth's opening and closing statements contain unfairly prejudicial arguments, which compromised Appellant's due process right to a fair trial?

Appellant's brief at 12.

Appellant's first issue concerns whether the trial court abused its discretion when it admitted evidence of appellant's drug activity. Appellant avers that the trial court permitted the Commonwealth to "put on a full trial-within-a-trial." (Appellant's brief at 27.) Specifically, a narcotics officer described her month-long investigation of appellant, which occurred four months prior to the murder. Appellant contends that there is no factual nexus between appellant's earlier drug transactions and the murder in issue.

The officer's testimony contained no information regarding any drug debt allegedly owed by appellant to the victim. We disagree.[3]

Admission of evidence rests within the discretion of the trial court, and we will not reverse absent an abuse of discretion. *Commonwealth v. Washington*, 63 A.2d 797, 805 (Pa.Super. 2013). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Martinez*, 917 A.2d 856, 859 (Pa.Super. 2007).

Generally speaking, evidence is admissible if it is relevant, that is, "if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Williams*, 896 A.2d 523, 539 (Pa. 2006), *cert. denied*, 549 U.S. 1213 (2007); Pa.R.E. 402. It is settled law in this Commonwealth that other bad acts evidence is inadmissible to prove a defendant's propensity to commit crime.

---

[3] We disagree with the trial court that this claim is waived. (Trial court opinion, 5/23/13 at 6.) Appellant filed a pre-trial motion *in limine* and objected to the introduction of this evidence for the same reasons outlined in his brief. Further, at the conclusion of his argument, trial counsel specifically asked the court to note his objection to the admission of the evidence, and the court stated the issue was preserved. (Notes of testimony, 12/17/12 at 11.)

***Commonwealth v. Brookins***, 10 A.3d 1251, 1256 (Pa.Super. 2010), ***appeal denied***, 22 A.3d 1033 (Pa. 2011).

Nonetheless, bad acts evidence may be introduced for other limited purposes. Instantly, the Commonwealth argued, and the trial court agreed, that the evidence was admissible as evidence of motive under Pa.R.E. 404(b)(2). "To be admissible under this exception, there must be a specific 'logical connection' between the other act and the crime at issue which establishes that 'the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.'" ***Commonwealth v. Ross***, 57 A.3d 85, 100 (Pa.Super. 2012), ***appeal denied***, 72 A.3d 603 (Pa. 2013) (citation omitted). This evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice. Pa.R.E. Rule 404(b)(3).

> It has been succinctly stated that (t)he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence.

***Commonwealth v. Spruill***, 391 A.2d 1048, 1049 (Pa. 1978).

At the hearing on appellant's motion ***in limine***, the Commonwealth explained that its theory was the victim was murdered because appellant and his conspirator owed the victim money for drugs the victim gave them

to sell.  (Notes of testimony, 12/17/12 at 4.)  The Commonwealth explained that in order to corroborate this motive, it wished to present evidence that for approximately five months prior to the murder, in the same area where the murder occurred, appellant was seen selling drugs.  Additionally, when a search warrant was executed at appellant's home, they recovered drugs and packaging materials.  The trial court granted the motion and permitted the evidence to be introduced solely on the issue of motive and found the probative value of the evidence outweighed its prejudicial effect.  (*Id.* at 8.)

After review, we find the court did not err in admitting the other acts evidence, that appellant had been investigated for selling drugs to a confidential informant on six separate occasions prior to the murder, as it was relevant to show motive.  This evidence was probative of his status as a drug dealer, and the Commonwealth's theory was that appellant killed the victim over a drug debt.  Thus, the evidence of drug-related activity was properly admitted to show that the killing did not occur in a vacuum.  ***See***, ***e.g.***, ***Commonwealth v. Hall***, 565 A.2d 144, 149 (Pa. 1989) (evidence of past drug dealings admissible to demonstrate motive for murder).  We conclude that the trial court did not abuse its discretion in determining that the probative value of the evidence outweighed any prospect for prejudice and was integral to the case.

The next issue presented concerns the trial court's rulings on objections to questions asked of Marquis Gilliard.  Appellant claims that it

was of "vital importance to the defense to question Gilliard regarding the details of his relationship to [the victim] and his subjective fears regarding future prosecution." (Appellant's brief at 37.)

Appellant first claims that the court abused its discretion in preventing him from questioning Gilliard about his possible connection to the subsequent murders of two prospective witnesses, Eric Whittaker and Stephen Hamilton. Appellant sought to question Gilliard about whether he was afraid that he would be charged with murder and whether, as a result of this fear, he was tailoring his testimony to gain favorable treatment by the Commonwealth in a possible future prosecution. (Appellant's brief at 38.) No relief is due.

> As a general rule, the scope and manner of cross-examination are within the sound discretion of the trial court. Absent a finding that the court abused its discretion, this Court will not disturb the trial court's determination.

*Commonwealth v. Rickabaugh*, 706 A.2d 826, 839 (Pa.Super. 1997), *appeal denied*, 736 A.2d 604 (Pa. 1999).

Counsel may cross-examine a witness subject to the usual limitations:

> "Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish the witness' motive for testifying." *Commonwealth v. Robinson*, 507 Pa. 522, 526, 491 A.2d 107, 109 (1985). "A witness may be cross-examined as to any matter tending to show the interest or bias of that witness." *Commonwealth v. Nolen*, 535 Pa. 77, 83, 634 A.2d 192, 195 (1993). "It is particularly important that, where the determination of a defendant's guilt

> or innocence is dependent upon the credibility of a prosecution witness, an adequate opportunity [must] be afforded to demonstrate through cross-examination that the witness is biased." *Commonwealth v. Birch*, 532 Pa. 563, 566, 616 A.2d 977, 978 (1992).

*Commonwealth v. Hyland*, 875 A.2d 1175, 1186 (Pa.Super. 2005), *appeal denied*, 890 A.2d 1057 (Pa. 2005). Nevertheless, the court "cannot allow cross-examination to become a fishing expedition, where the examiner may ask questions based on a subjective hunch, or worse, based on nothing at all[.]" *In interest of M.M.*, 653 A.2d 1271, 1277 (Pa.Super. 1995).

In defending the decision to limit Gilliard's cross-examination, the trial court relies upon our supreme court's holding in *Commonwealth v. Evans*, 512 A.2d 626 (Pa. 1986). In *Evans*, the court held that "whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury." *Id.* at 631. The *Evans* court also explained that even if the prosecution has made no direct promises, the witness might hope for favorable treatment in lieu of his testimony. *Id.* at 631-632.

As the trial court correctly notes, there were "no open charges against Mr. Gilliard, and no information in the police paperwork that Mr. Gilliard was a suspect in any crimes." (Trial court opinion, 5/23/13 at 5.) Rather, "in arguing for permission to cross-examine Mr. Gilliard about being a suspect in various homicides, defense counsel merely offered his unsupported

contention that 'we all pretty much know the area and know a lot of people believe [Mr. Gilliard] is involved in a number of homicides and I believe I'm not talking out of turn there.'" (*Id.*, citing notes of testimony, 12/20/12 at 7.)

Appellant cites no supporting case law and we know of no such statement of the law which would permit the cross-examination of a witness as to his perceived bias when based on unsupported assertions that the witness was suspected of being involved in a crime. Appellant, however, attempts to persuade us that the principle enunciated in **Commonwealth v. Nolen**, 634 A.2d 192 (Pa. 1993), should be applied.

In **Nolen**, our supreme court held it was error to preclude defense counsel from cross-examining a witness about the fact that various charges were pending against him both in Pennsylvania and Virginia at the time he agreed to testify for the Commonwealth, although not at the time of trial. We observed that the reason the witness' cases were no longer pending when he was called to testify at trial was that they had been resolved in the witness' favor, the Virginia charges by dismissal and the Pennsylvania charges by payment of a fine to a reduced offense. The **Nolen** panel held the potential for bias continued beyond the closure of those cases, and thus remained a proper subject of cross-examination, since the favorable resolutions might have been related to the witness' agreement to testify.

Herein, appellant argues that "[l]ogically, a witness who is afraid that he might be charged, in the future with two murders, might tailor his testimony for the identical reasons: the prosecutor's perceived ability to incarcerate the witness." (Appellant's brief at 39.) We disagree and find the trial court properly concluded that questioning Gilliard about unrelated homicides based on counsel's unsupported speculation would be prejudicial. *See Commonwealth v. Whiting*, 668 A.2d 151 (Pa.Super. 1995) (when defense counsel attempted to cross-examine witness regarding her being "on the run" with her fugitive husband, the trial court ruled the evidence inadmissible as she was never convicted of a crime); *Commonwealth v. Fuller*, 485 A.2d 1197, 1198 (Pa.Super. 1984) (a witness' credibility may not be impeached by prior acts of misconduct which have not led to convictions). Clearly, as there were no open criminal charges filed against Gilliard, the trial court did not abuse its discretion in limiting appellant's cross-examination.

Appellant's second and third theories of relief regarding Gilliard's testimony concern whether the trial court abused its discretion in precluding the defense from questioning Gilliard about whether he worked as a drug dealer for Parker and questioning him about the victim's propensity for violence. (*See* appellant's brief at 40, 43.) Appellant argues that he was entitled to probe the relationship Gilliard had with Parker, especially in light of the fact that Gilliard fled the area after his murder and was a "potential

suspect" in the deaths of two witnesses to Parker's murder. Appellant states that such questions were relevant to Gilliard's alleged motive to fabricate. Additionally, he claims that if "Gilliard knew that Parker had, in fact, employed violence in the past to collect drug debts . . . this information could have uncovered the existence of specific alternative suspects." (*Id.* at 43.)

In conducting our review, we find that the Honorable Glenn B. Bronson has ably and thoroughly addressed and analyzed appellant's arguments concerning these claims in his Pa.R.A.P. 1925(a) opinion. We, therefore, adopt and incorporate this portion of Judge Bronson's opinion as our own. (*See* trial court opinion, 5/23/13 at 9-10.) Moreover, we note that before appellant's objection was lodged concerning the victim's propensity for violence, defense counsel had already asked several questions concerning the victim's aggressive behavior and reputation as an "enforcer" who would pursue money that was owed to him for drug sales. (*See* notes of testimony, 12/20/12 at 92-93.)

Appellant also argues that during the direct examination of Gilliard, the Commonwealth asked "what happens to snitches?" (Appellant's brief at 43.) He argues that there was no evidence to suggest appellant had tried to intimidate Gilliard and the question created an "unfair impression that Gilliard had been threatened." (*Id.* at 44.) Again, we find that Judge Bronson has ably and thoroughly addressed appellant's arguments

concerning these claim in his Pa.R.A.P. 1925(a) opinion. We incorporate this portion of Judge Bronson's opinion as our own. (*See* trial court opinion, 5/23/13 at 8-9.)

We now turn to the issue concerning whether the trial court erroneously sustained the Commonwealth's objection to a question appellant asked Detective Donald Marano about Andrew Fairey's pre-statement custody. Appellant claims potentially coercive conditions were employed prior to securing a statement from Fairey that inculpated appellant. (Appellant's brief at 45.) Following our review of the record, we agree with the trial court that appellant's questions of Detective Marano were duplicative and cumulative of questions asked of Detective Charles Grebloski who took Fairey's statement along with Detective Marano. Detective Grebloski had been extensively cross-examined concerning the conditions under which Fairey gave his statement to the police. (Notes of testimony, 12/18/12 at 257-260.) Thus, we agree that the trial court properly sustained the objection.

The final question presented is whether the Commonwealth's opening and closing statements contained unfairly prejudicial arguments, which compromised appellant's due process right to a fair trial.

> The standard for granting a new trial because of the comments of a prosecutor is a high one. Generally, a prosecutor's arguments to the jury are not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility

> towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict. This standard permits us to grant a new trial based on the comments of a prosecutor only if the unavoidable effect of the comments prevented the jury from considering the evidence. A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor.

*Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (citation omitted). *See also Commonwealth v. Hood*, 872 A.2d 175, 185 (Pa.Super. 2005).

Appellant raises a series of assertions of prosecutorial misconduct. First, he claims that the prosecutor committed misconduct by referring to the fact that the victim had family and that his mother had to identify his body. (Appellant's brief at 48-49.) We cannot find that the trial court erred in finding that the prosecution was attempting to avoid jury nullification based on the victim's unlawful drug-dealing activities. The prosecutor was reminding the jury that the victim was human and such fell within the boundaries of oratorical flair. "While reference to irrelevant matters should be avoided, we note that murder victims are not simply props or irrelevancies in a murder prosecution, and innocuous references to victims and their families are not necessarily prejudicial." *Commonwealth v. Freeman*, 827 A.2d 385, 415 (Pa. 2003). *See also Commonwealth v. Rios*, 920 A.2d 790 (Pa. 2007) ("Further, a criminal defendant does not have the right to have all evidence presented against him at trial sanitized of

anything that could cause jurors to sympathize with the victim or his family."). A mistrial was certainly not warranted.

Next, appellant claims that the prosecutor's assertion that people in the courtroom were "gritting on"[4] Gilliard during his testimony constituted reversible error. (Appellant's brief at 49-51.) We cannot find that this single remark deprived the jury of its ability to return a fair verdict. As the trial court notes in its opinion, it did not appear that the jurors understood what the term "gritting" meant. (Trial court opinion, 5/23/13 at 12.) The jury was instructed that counsel's comments were not to be considered as evidence. (Notes of testimony, 12/17/12 at 32, 34.) *See Commonwealth v. Simmons*, 662 A.2d 621, 639-640 (Pa. 1995), *cert. denied*, 516 U.S. 1128 (1996) (where jury is cautioned that arguments are not evidence and that their recollection of the facts controls, any alleged prejudice from the prosecutor's argument is cured).

Appellant also argues that the prosecutor's remark that appellant had been hoping that Gilliard was not going to come to court was groundless and improper argument pertaining to his state of mind. (Appellant's brief at 51.)[5] No relief is due; this remark was a fair inference that appellant could

---

[4] The term "gritting on" apparently is slang for an attempt to intimidate, scare, or confront.

[5] We disagree with the Commonwealth that defense counsel did not object to this remark; the record demonstrates an objection was lodged and overruled. (Notes of testimony, 12/21/12 at 68.)

not have been pleased by the appearance of Gilliard, who identified him as a murderer.

Appellant also claims that misconduct occurred when the prosecutor stated that "there was no alibi filed in this case. And there are rules that say --." (Notes of testimony, 12/21/12 at 66.) The trial court correctly found that while a reference "to the alibi rules was improper, defense counsel objected before the prosecutor was even able to state her contention about what the rules provided." Thus, a mistrial was unwarranted.

Finally, appellant avers that the trial court erred in failing to provide curative instructions. (Appellant's brief at 53-54.) Appellant does not direct us to the place in the record where such a request can be found, and the Commonwealth asserts that appellant did not request specific curative instructions. Indeed, our review of the record indicates that trial counsel never requested such a remedy, and thus, this assertion is waived. **See** Pa.R.A.P. 2119(e) (statement of place of raising or preservation of issues); Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal); **Commonwealth v. Johnson**, 42 A.3d 1017, 1026 (Pa. 2012), **cert. denied**, 133 S.Ct. 1795 (2013) ("Appellant also faults the trial court for failing to give a contemporaneous limiting instruction. Insofar as appellant complains about the lack of a

contemporaneous instruction, he waived this claim by failing to request a curative instruction.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2014

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

**FILED**

CP-51-CR-0001983-2011

v.

MAY 2 3 2013

ERVIN SPURIEL.

Criminal Appeals Unit
First Judicial District of PA
OPINION

BRONSON, J.

May 23, 2013

On December 21, 2012, following a jury trial before this Court, defendant Ervin Spuriel was convicted of one count of murder of the first degree (18 Pa.C.S. § 2502(a)), one count of criminal conspiracy to commit murder (18 Pa.C.S. §§ 903 & 2502), and one count of carrying a firearm on a public street in Philadelphia (18 Pa.C.S. § 6108). The Court deferred sentence to January 11, 2013. On that day, the Court imposed the mandatory sentence of life in prison for the murder charge (18 Pa.C.S. § 1102(a)(1)), along with concurrent sentences of 20 to 40 years on the conspiracy charge and one to two years on the firearms charge.[1] Defendant filed post-sentence motions, which were denied on February 1, 2013.

Defendant has now appealed from the judgment of sentence entered by the Court on the grounds that: 1) the trial court erred in not allowing defendant to cross-examine witness Marquis Gilliard regarding two unrelated homicides; 2) the trial court erred in denying a defense request to allow Mr. Gilliard to consult with counsel prior to giving his testimony; 3) the trial court erred in permitting the Commonwealth to introduce evidence of an open narcotics investigation against defendant; 4) the trial court erred in sustaining the Commonwealth's objection to defendant's inquiry into the conditions surrounding the police questioning of Commonwealth witness Andre

---

[1] Defendant was jointly tried with co-defendant Chaz Henry, who was convicted of the same charges.

A-1

Fairey; 5) the trial court erred in overruling defendant's objection to the Commonwealth's questioning of Mr. Gilliard as to "what happens to snitches;" 6) the trial court erred in sustaining the Commonwealth's objection to defendant's inquiry into whether Mr. Gilliard sold drugs for the decedent, Jamal Parker; 7) the trial court erred in sustaining the Commonwealth's objection to defendant's inquiry into Mr. Parker's propensity for violence; 8) the trial court erred in either overruling objections to, or offering insufficient curative instructions regarding, four separate remarks made by the Commonwealth during opening and closing arguments; and 9) defendant was denied due process, as the evidence against him "consisted solely of the out-of-court statements of witnesses who recanted their accusations under oath at trial." Statement of Matters Complained of on Appeal ("Statement of Errors") at ¶¶ 1-9. For the reasons set forth below, defendant's claims are without merit and the judgment of sentence should be affirmed.

## I. FACTUAL BACKGROUND

At trial, the Commonwealth presented the testimony of David Marks, Andre Fairey, David Henry, Marquis Gilliard, Mary Parker-Bishop, Dr. Marlon Osbourne, Philadelphia Police Officers Edward Kavanagh, Gary Guaraldo, Edward Nelson, John Smith, Margaret McGrory, and Philadelphia Police Detectives Thorsten Lucke, Charles Grebloski, James Crone, and Donald Marano. Viewed in the light most favorable to the Commonwealth as the verdict winner, their testimony established the following.

On July 10, 2010, at approximately 10:18 p.m., Jamal Parker was driving down 21st Street toward Mifflin Street in South Philadelphia. N.T. 12/20/2012 at 49-50. Mr. Parker saw a friend, Marquis Gilliard, walking down the street, and stopped his car briefly to talk to him. N.T. 12/20/2012 at 49. Mr. Parker then continued driving down the block and got out of the car. N.T. 12/20/2012 at 49. Mr. Parker approached a group of men that included defendant and co-

A-2

2

defendant Henry, both of whom had sold drugs for Mr. Parker, along with Andre Fairey, Antoine Smith, and defendant's brother, Devon Henry. N.T. 12/20/2012 at 49. Defendant called over to Mr. Parker and acted as though he was going to give Mr. Parker money. N.T. 12/20/2012 at 49, 53. Co-defendant Henry then pulled a gun from his waist and began chasing Mr. Parker, shooting him. N.T. 12/20/2012 at 49. Defendant approached Mr. Parker and also shot him, after which Mr. Parker collapsed to the ground. N.T. 12/20/2012 at 49-52. Defendant continued to shoot Mr. Parker in the back after he fell. N.T. 12/20/2012 at 50. Defendant, co-defendant Henry, Devon Henry, Mr. Fairey, and Mr. Smith all fled the scene. N.T. 12/20/2012 at 50.

Police arrived and transported Mr. Parker to the University of Pennsylvania Hospital, where he was pronounced dead at 10:28 p.m. N.T. 12/18/2012 at 12-16, 97. He had been shot nine times, once each in the head, neck, arm, hip, buttock, thigh, and leg, and twice in the back. N.T. 12/18/2012 at 87-91. The police recovered 11 fired cartridge casings from the scene, eight of which had been fired from the same .40 caliber handgun and three of which had been fired from the same .45 caliber handgun. N.T. 12/18/2012 at 159-160, 203, 208-209. Two .40 caliber bullets were recovered from Mr. Parker's jaw and throat, and one .45 caliber bullet was recovered from his back. N.T. 12/18/2012 at 209-213. The weapons used in the shooting were not recovered. N.T. 12/18/2012 at 161, 213.

Marquis Gilliard was questioned by homicide detectives. N.T. 12/20/2012 at 44-67. He identified defendant and co-defendant Henry, both of whom he knew personally, as the people who shot and killed Mr. Parker. N.T. 12/20/2012 at 49-52. Mr. Gilliard told police that the murder was over money, as both defendant and co-defendant Henry owed Mr. Parker money for drugs. N.T. 12/20/2012 at 29-33. Devon Henry was also questioned by the police and told police that he had witnessed the shooting. N.T. 12/18/2012 at 113-117; 12/19/2012 at 7-22. He

A-3

3

also told police that defendant and co-defendant Henry had talked to him about the shooting after it happened, and that the murder was committed over drug money that they both owed to Mr. Parker. N.T. 12/18/2012 at 116-118; 12/19/2012 at 14-16. Detectives questioned David Marks, a friend of Mr. Parker, who told them that on the night of the shooting, defendant told him that he had killed Mr. Parker. N.T. 12/17/2012 at 76-81.

Police recovered two cell phones from the scene of the shooting, both of which belonged to Mr. Parker. N.T. 12/19/2012 at 114. From one of these phones, they recovered several text message exchanges between defendant and Mr. Parker, one of which, from defendant, that stated, "After this I'm done. One minute you act like my man then you act like you don't care. I'll give you your dough." N.T. 12/19/2012 at 120. Mr. Parker had also called defendant two times immediately prior to the shooting, once at 10:13 p.m. and once at 10:14 p.m. N.T. 12/19/2012 at 125-133. Defendant and co-defendant Henry were arrested.

## II. DISCUSSION

### A. Cross-Examination of Marcus Gilliard

Defendant first claims that "[t]he trial court erroneously precluded the defense from cross-examining Commonwealth witness Gilliard regarding any concern, on Gilliard's part, that the Commonwealth might consider him to be a suspect in the deaths of two eyewitnesses to the murder of decedent Parker. Even if the Commonwealth did not so consider him, the defense had a right to explore Gilliard's state of mind, his fear of future prosecution, and any motive he might personally harbor to curry favor with the Commonwealth." Statement of Errors at ¶ 1. This claim is without merit.

It is true that where a witness in a criminal case has open charges pending against him, that may give rise to a motive to testify against the defendant in the hopes of obtaining favorable

A-4

4

treatment from the Commonwealth. Therefore, the pendency of open charges is a proper subject for cross-examination. *See Commonwealth v. Evans*, 512 A.2d 626, 631 (Pa. 1986). Here, however, there were no open charges against Mr. Gilliard, and no information in the police paperwork that Mr. Gilliard was a suspect in any crimes. In arguing for permission to cross-examine Mr. Gilliard about being a suspect in various homicides, defense counsel merely offered his unsupported contention that "we all pretty much know the area and know a lot of people believe [Mr. Gilliard] is involved in a number of homicides...." N.T. 12/20/2012 at 7. That unsupported averment of counsel was insufficient to open the door to a line of questioning that had little, if any probative value, and a great potential to be unfairly prejudicial to the Commonwealth's case. It was, therefore, properly excluded by the Court.

### B. *Denial of Request by Witness Gilliard to Consult with Attorney*

Defendant next claims that "[t]he trial court erroneously denied a defense request to permit Mr. Gilliard to consult with counsel prior to his testimony, where: (1) it was anticipated by the Commonwealth that Mr. Gilliard would perjure himself on the stand; (2) Gilliard was a potential suspect in two ongoing homicide investigations; (3) outside counsel appeared, at the apparent request of Gilliard, and requested the opportunity to speak with him; and (4) despite outside counsel's presence, the trial court did not ask Mr. Gilliard if he wished to consult with counsel prior to his testimony." Statement of Errors at ¶ 2. This claim is frivolous, as defendant does not have standing to raise on appeal the denial of counsel to another individual. No relief is due.

A-5

5

*C. Admission of Evidence of Defendant's Prior Drug Dealing*

Defendant next claims that "[t]he trial court erroneously permitted the Commonwealth to introduce extensive evidence regarding a prior narcotics investigation, which resulted in the arrest of Defendant Spuriel for PWID. This charge remained open at the time of the instant proceeding. The prejudicial impact outweighed the probative value of this detailed description of a prior bad act." Statement of Errors at ¶ 3. Defendant's claim is waived, and in any event, is without merit.

First, at no point during the trial did defendant object to the admission of defendant's prior drug dealing. Because defendant's claim was never raised in the trial court, it is waived for purposes of appeal. *See* Pa.R.A.P. 302(a); *Commonwealth v. Stevenson*, 894 A.2d 759, 766 (Pa. Super. 2006), *appeal denied*, 917 A.2d 846 (Pa. 2007) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Even if defendant had properly preserved his claim, it would be without merit. While evidence of other crimes and acts is not admissible to prove bad character or criminal propensity, it may be admitted for other purposes where the probative value of the evidence outweighs the potential for prejudice. Pa.R.E. 404(b); *see Commonwealth v. Williams*, 896 A.2d 523, 539 (Pa. 2006), *cert. denied*, 549 U.S. 1213 (2007). Among the purposes for which evidence of other acts may be offered is to "prov[e] motive." Pa.R.E. 404(b)(2). The admission of other acts by the trial court will only be reversed upon a showing of an abuse of discretion. *Commonwealth v. Chmiel*, 889 A.2d at 534 (citing *Simmons*, 662 A.2d at 635).

Here, the evidence of defendant's prior drug dealing was admitted because it was provided compelling corroboration of the testimony of the witnesses who established defendant's motive to kill Mr. Parker. According to both Marquis Gilliard and Devon Henry, defendant and

co-defendant Chaz Henry sold crack cocaine for Mr. Parker and both men owed him money at the time of the killing. N.T. 12/18/2012 at 116-118; 12/19/2012 at 14-16; 12/20/2012 at 29-33. The Commonwealth contended that Mr. Parker was murdered by defendant and Chaz Henry in order to avoid that drug debt. Defendant's prior drug dealing, therefore, provided highly probative corroboration for Mr. Gilliard and Devon Henry, both of whom were subjected to intense credibility attacks by defendant during the trial. The Court thus properly admitted defendant's prior drug dealing under Rule 404(b).

### D. Cross-Examination Regarding Witness Fairey's Statement

Defendant next claims that "[t]he trial court erroneously sustained the Commonwealth's objection to defense counsel's inquiry into the potentially coercive conditions under which the police questioned witness Fairey, prior to securing a statement from Mr. Fairey that inculpated Mr. Spuriel." Statement of Errors at ¶ 4. This claim is without merit.

It is true that when Detective Donald Marano, who had interviewed Andre Fairey in the course of the murder investigation, testified to the contents of Mr. Fairey's statement, the Court sustained an objection by the Commonwealth to defendant's questions regarding Mr. Fairey's treatment while he was in police custody. N.T. 12/19/2012 at 148. However, this subject had already been exhaustively covered by a prior witness at trial. In particular, the previous day, Detective Charles Grebloski, who took Mr. Fairey's statement along with Detective Marano, had been extensively cross-examined regarding the conditions under which Mr. Fairey gave his statement to the police. N.T. 12/18/2012 at 257-260. As the questions that defendant asked Detective Marano the next day regarding Mr. Fairey's time at the police station were duplicative and cumulative, the Court properly sustained the Commonwealth's objection. *See* Pa.R.E. 403

A-7

(permitting the exclusion of evidence if its probative value is outweighed "by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

E. *Commonwealth Question to Witness Gilliard Regarding "Snitches"*

Defendant next claims that "[t]he trial court erroneously overruled defense counsel's objection to the Commonwealth's general questioning of witness Gilliard, regarding 'what happens to snitches.' In a case where two witnesses to the instant offense had been killed and where two other witnesses had recanted their prior accusations, the inevitable effect was to suggest that Defendant had taken steps to intimidate the witnesses." Statement of Errors at ¶ 5. This claim is without merit.

Marquis Gilliard gave a statement to the police in which he told police that he was present at the scene of the shooting and that he witnessed defendant and co-defendant Henry shoot and kill Jamal Parker. N.T. 12/20/2012 at 51-52. When Mr. Gilliard testified at trial, he initially denied seeing who shot Mr. Parker. N.T. 12/20/2012 at 39. Defendant's statement to the police was then admitted for its truth as a prior inconsistent statement that was signed and adopted by the declarant. *See* Pa.R.E. 803.1(1)(b). As Mr. Gilliard continued his testimony and was questioned by the assistant district attorney regarding his prior statement, he eventually admitted that he had witnessed defendant and co-defendant Henry commit the murder, and confirmed other details from his statement. N.T. 12/20/2012 at 49-64. The assistant district attorney then inquired into why Mr. Gilliard initially disavowed his statement to the police during his trial testimony, and why he did not want to come to court to testify. N.T. 12/20/2012 at 69-70. Mr. Gilliard replied that "[i]f somebody comes to court you are a snitch." N.T. 12/20/2012 at 69. The assistant district attorney asked whether it was a bad thing to be a "snitch," and asked what happens to snitches. N.T. 12/20/2012 at 69-70. The Court overruled

A-8

defendant's objections to these questions, permitting Mr. Gilliard to answer the questions posed to him by the Commonwealth in order to explain to the jury the inconsistencies among his various versions of the events during his statement to the police and his trial testimony. N.T. 12/20/2012 at 70. The Court also immediately gave a limiting instruction, informing the jury that there was no evidence in the case that either defendant or co-defendant Henry had intimidated Mr. Gilliard, and that Mr. Gilliard's testimony regarding "snitches" was being admitted solely to explain his reluctance to testify and the inconsistencies between his statement to police and his trial testimony. N.T. 12/20/2012 at 70. This instruction ameliorated any implication that defendant was involved in witness intimidation in any way. No relief is due.

### F. *Commonwealth Question Regarding Relationship between Witness Gilliard and Decedent*

Defendant next claims that "[t]he trial court erroneously sustained the Commonwealth's objection to defense counsel's question, regarding whether witness Gilliard sold drugs for decedent Parker. The defense was entitled to fully probe the Gilliard's [*sic*] relationship to Parker, particularly where Gilliard had fled the area after Parker's murder and where Gilliard was a potential suspect in the deaths of two witnesses to Parker's murder." Statement of Errors at ¶ 6. This claim is without merit.

First, defendant offers no reason why any evidence of Mr. Gilliard's alleged drug dealing would have been in any way relevant to the issues in the case. As stated in section II(A), above, there was never any evidence that Mr. Gilliard was a suspect in any homicides, including the deaths of any witnesses to Mr. Parker's murder. If defendant's implication is that Mr. Gilliard was the person who killed Mr. Parker, there is no evidence anywhere in the record to support that theory, or to suggest why, if Mr. Gilliard was selling drugs for Mr. Parker, it would have supported defendant's contention.

A-9

9

Instead, the record shows that the question was an apparent attempt to attack the credibility of Mr. Gilliard by suggesting that he was a drug dealer. That, of course, is barred by the Rules of Evidence. *See* Pa.R.E. 608(b) (specific instances of conduct, apart from criminal convictions admissible under the rules, not admissible to attack the character of a witness for truthfulness).

Accordingly, the Court properly sustained the Commonwealth's objection to defendant's question regarding Mr. Gilliard's purported drug activity with Mr. Parker.

### G. Decedent's Propensity for Violence

Defendant next claims that "[t]he trial court erroneously sustained the Commonwealth's objection to defense counsel's questions, posed to witness Gilliard, regarding decedent Parker's propensity for violence." Statement of Errors at ¶ 7. This claim is without merit.

Evidence of a victim's violent character is only admissible where self-defense is asserted by the defendant and where there is an issue as to the identity of the aggressor. *See, e.g., Commonwealth v. Busanet*, 54 A.3d 35, 51 (Pa. 2012). Because no self-defense claim was ever raised at any point during the trial, no relief is due.

### H. Prejudicial Statements by the Assistant District Attorney

Defendant next challenges several arguments made by the assistant district attorney during opening and closing statements, which defendant claims "compromised Defendant's due process right to a fair trial." Statement of Errors at ¶ 8. Defendant claims that "[t]he trial court either erroneously overruled the defense's objections to these arguments or provided curative instructions which were insufficient to 'unring the bell' and to overcome the inevitable, unfair prejudice." Statement of Errors at ¶ 8. Defendant's four claims of prosecutorial misconduct, each of which is addressed below, are without merit.

A-10

10

As our courts have repeatedly stated, "prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009) (quoting *Commonwealth v. Chmiel*, 889 A2d. 501, 544 (Pa. 2005)). It is well-established that an assistant district attorney's comments during argument do not require a new trial unless the "unavoidable effect" of the comments "would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Linder*, 425 A.2d 1126, 1128 (Pa. Super. 1981) (quoting *Commonwealth v. Stoltzfus*, 337 A.2d 873, 882 (Pa. 1975)).

Defendant first claims that the Commonwealth made "[i]rrelevant appeals to sympathy,.. regarding the mother and children of the decedent." Statement of Errors at ¶ 8(a). The statement to which defendant refers was made during opening argument and reads in its entirety:

> **[Assistant District Attorney]**: Now, I understand that some cynical people may think, well, if everyone is selling drugs, then maybe they shouldn't have been doing that. Some people may think, well, Jamal Parker was in the game. This is part of the game. But Jamal Parker has a mother. Jamal Parker has a father and they loved him dearly. Jamal Parker has children. And no mother deserves to go down to the medical examiners office --
> **[Defense Attorney]**: Objection.
> **[The Court]**: This is opening statement. I will allow that.
> **[Assistant District Attorney]**: -- to have to identify her son's body riddled with bullets. Also, we are not here today to judge the life of Jamal Parker and to say if he was a good person or to say if he deserved to live. We are here today to hold these defendants accountable for their actions.

N.T. 12/17/2012 at 39-40. Here, the assistant district attorney's comments were apparently intended to avoid a jury nullification verdict based upon the decedent's unlawful activities as a drug dealer. She properly informed the jury that the criminal activities of the victim were not an excuse for, nor a defense to, the homicide charges. Her comments regarding the victim's mother

*A-11*

11

and children were a part of the prosecutors attempt to portray the victim as a human being, and not just a drug dealer. Accordingly, the comments fell within the boundary of oratorical flair and did not require a mistrial under the applicable standard.

Defendant next claims that the assistant district attorney made "unsubstantiated claims, in closing, that Defendant's family had been 'gritting on' (i.e. attempting to intimidate) the Commonwealth's witnesses during their testimony." Statement of Errors at ¶ 8(b). The comment at issue was made while the prosecutor was addressing the credibility of witness Marquis Gilliard:

> [Assistant District Attorney]: Marquis got up here and when he sat down, look at where he is facing. He has to face those defendants. He has to face everyone in this courtroom from the neighborhood who were gritting on him during his entire testimony
> [Defense Attorney]: I would object to that, judge.
> [The Court]: All right. That is not part of the evidence so I will sustain that objection.

N.T. 12/21/2012 at 53. Other than the prosecutor, it would appear that no one in the courtroom, including the members of the jury, had any idea what the term "gritting on" meant. To the extent that the prosecutor was referring to the conduct of people in the gallery, because that was not part of the record, the Court immediately sustained the objection to the offending comment. The "unavoidable effect" of this isolated comment by the assistant district attorney cannot be said to have prejudiced the jury to the point that a mistrial was required. *Linder*, 425 A.2d at 1128 (quoting *Stoltzfus*, 337 A.2d at 882).

Defendant next claims that the assistant district attorney alleged that defendant "failed to follow 'the rules' regarding the introduction of alibi testimony." Statement of Errors at ¶ 8(c). The offending remarks were as follows:

A-12

12

[Assistant District Attorney]: And how dare he get up here and say that he was out there, but one block away, and he couldn't have done it because he was at a cookout when the shooting happened. First of all, that would be alibi. And there was no alibi filed in this case. And there are rules that say--
[Defense Attorney]: Objection.
[The Court]: Sustained.

N.T. 12/21/2012 at 66. Although the reference to the alibi rules was improper, defense counsel objected before the prosecutor was even able to state her contention about what the rules provided. Moreover, the Court promptly sustained counsel's objection. A mistrial was not warranted.

Defendant's final claim of prosecutorial misconduct is that the assistant district attorney made "unsubstantiated claims that Defendant had been sitting at counsel table throughout the trial, hoping that the police would be unable to find Mr. Gilliard and present Gilliard as a witness," and that these claims "constituted an impermissible commentary on Mr. Spuriel's decision to forgo testifying." Statement of Errors at ¶ 8(d). Because defendant did in fact testify at trial, this claim is frivolous. N.T. 12/20/2012 at 136-191.

*I. Recanted Testimony*

Finally, defendant claims that he was "denied due process under the United States Constitution, where the evidence against him consisted solely of the out-of-court statements of witnesses who recanted their accusations under oath at his trial." Statement of Errors at ¶ 9. This claim is waived, and is, in any event, without merit.

First, defendant's claim was never raised in the trial court, and is thus waived. *See Commonwealth v. Burkett*, 830 A.2d 1034, 1037 (Pa. Super. 2003). Further, as defendant acknowledges in his Statement of Errors, "the Pennsylvania Supreme Court has determined that a defendant can be convicted solely on the basis of signed out-of-court statements, as long as the

A-13

recanting witness testifies at the trial." Statement of Errors, ¶ 9 at n.2; *see Commonwealth v. Brown*, 52 A.3d 1139, 1171 (Pa. 2012). No relief is due.

## III. CONCLUSION

For all of the foregoing reasons, the Court's judgment of sentence should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

14