J-A31026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RENE SANCHEZ | |
| Appellant | No. 1792 MDA 2012 |

Appeal from the Judgment of Sentence November 22, 2011
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0002971-2010

BEFORE: BOWES, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.: **FILED MARCH 18, 2015**

Rene Sanchez appeals the judgment of sentence entered November 22, 2011, in the Lackawanna County Court of Common Pleas made final by the denial of post sentence motions on September 12, 2012.[1] The trial court imposed an aggregate sentence of 25 to 53 years' imprisonment, followed by four years' probation, for his convictions of involuntary deviate sexual intercourse ("IDSI"), statutory sexual assault,[2] and related charges,

---

[1] We note that Sanchez filed his notice of appeal from the order entered September 12, 2012, denying his motion for reconsideration of sentence. However, "in a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." ***Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*), *appeal denied*, 800 A.2d 932 (Pa. 2002). Therefore, we have corrected the caption accordingly.

[2] 18 Pa.C.S. § § 3123(a)(7) and 3122.1, respectively.
*(Footnote Continued Next Page)*

resulting from the sexual abuse of his minor cousin ("the victim").   On appeal, Sanchez argues (1) the trial court abused its discretion in precluding cross-examination of the victim regarding prior false allegations she made to the police, and (2) the court erred when it imposed consecutive sentences for the charges of IDSI.  Although we conclude the issues raised by Sanchez on appeal are meritless, for the reasons set forth below, we are constrained to vacate the judgment of sentence, and remand for resentencing.

The facts underlying Sanchez's conviction are as follows.  In November of 2009, the victim reported to the Children's Advocacy Center in Scranton, Pennsylvania, that Sanchez, her adult cousin,[3] sexually molested her on three occasions during the summer of 2008, when she was 13 years old.[4] The first incident occurred near the end of the school year.  The victim accompanied Sanchez to a CVS Pharmacy.  However, rather than go in the store, Sanchez pulled his car, with tinted windows, near a dumpster behind the building.  He then provided her with cocaine, and sexually assaulted her in the back seat.  Sanchez warned the victim not to tell her mother about

_(Footnote Continued)_  ──────────────

[3] Sanchez was 22 years old at the time of the incidents in question.

[4] The victim initially indicated that the assaults occurred in the summer of 2007, when Sanchez and his family lived with her family for a few months. However, she corrected her testimony at trial after learning that Sanchez lived with her family in 2008.

the assaults, and threatened to expose the victim's drug use and drinking if she did.

The second incident occurred a few weeks later at Sanchez's home. Sanchez asked the victim and her brother to help carry bags into his house for his mother. Once there, Sanchez told his brother to take the victim's brother for a ride. The victim asked Sanchez's brother to stay, pleading "Don't go because you know what he's going to do[.]" N.T., 5/31/2011-6/1/2011, at 39. However, Sanchez's brother replied, "[O]h, just suck it up, like forget about it." *Id.* After she carried a bag upstairs, Sanchez pulled her into his room, and, once again, sexually assaulted her. Sanchez again threatened the victim, stating "[D]on't tell your mom or I will tell her that you are smoking and drinking and … you know, if I tell her she is going to believe me and they will send [you] away to rehab." *Id.* at 41.

The third assault occurred at the victim's house during a family barbecue. Sanchez anally raped the victim while she was watching TV in the living room. He reiterated his threat not to tell her mother. Although the victim confided in her brothers and a friend about the assaults, she did not tell her parents until sometime in 2009.[5] The victim's father then informed the police of his daughter's allegations.

_____

[5] The victim's older brother, who was 14 years old at the time of the assaults, testified that he did not tell his parents because Sanchez threatened to expose his drug use if he did. N.T., 5/31/2011-6/1/2011, at 107.

Sanchez was subsequently arrested and charged him with numerous sexual offenses. On May 24, 2011, the Commonwealth filed a motion *in limine*, seeking to preclude Sanchez from introducing at trial evidence that in October of 2008, the victim had provided false information to the police alleging that an unknown black male had kidnapped her and forced her to smoke marijuana. She later recanted, admitting that she fabricated the story because she had arrived home late, after smoking marijuana. Although Sanchez objected, the trial court granted the Commonwealth's motion.

The case proceeded to a jury trial on May 31, 2011. On June 1, 2011, the jury returned a verdict of guilty on the following charges: two counts of IDSI; three counts each of statutory sexual assault, unlawful contact with minors, and aggravated indecent assault; and one count each of indecent assault and corruption of minors.[6] On June 3, 2011, the trial court ordered Sanchez to undergo an assessment by the Sexual Offenders' Assessment Board to determine if he was a sexually violent predator (SVP) under the former Megan's Law. ***See*** 42 PaC.S. § 9795.4.[7] That same day, the

_____

[6] 18 Pa.C.S. §§ 3123(a)(7), 3122.1, 6318, 3125, 3126, and 6301, respectively.

[7] Pennsylvania's Megan's Law expired on December 20, 2012, and was replaced by the Sexual Offenders Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10-9799.41. Section 9799.24 replaced Section 9795.4 with regard to an order for an SVP assessment.

Commonwealth provided notice of its intent to invoke mandatory minimum sentences of 10 to 20 years' imprisonment for Sanchez's convictions of IDSI, pursuant to 42 Pa.C.S. § 9718(a)(1).

Following a hearing on November 22, 2011, the trial court determined that Sanchez did not meet the criteria for classification as a sexually violent predator under Megan's Law. *See* N.T., 11/22/2011, at 21. The court proceeded immediately to sentencing, imposing an aggregate term of 25 to 53 years' imprisonment, followed by four years' probation.[8] Sanchez filed a

---

[8] The court sentenced Sanchez as follows: two consecutive terms of 10 to 20 years' imprisonment for the charges of IDSI; a term of one to five years' imprisonment for each count of statutory sexual assault, to run concurrently to each other and consecutively to the other charges; a term of one to two years' imprisonment for each count of unlawful communication with minors, to run concurrently to each other and consecutively to the other charges; a term of three to six years' imprisonment for each count of aggravated indecent assault, to run concurrently to each other and consecutively to the other charges; and two years' probation on the charges of indecent assault and corruption of minors. The court originally ordered the probation sentences to run consecutively to each other. However, the court noted in in its December 2013 opinion that it modified the original sentence by order dated February 13, 2012, so that the probation terms would run concurrently "based upon the inability of the Pennsylvania Board of Parole to accept supervision of [Sanchez] pending his deportation[.]" Trial Court Opinion, 12/30/2013, at 17 n.6. However, the February 13, 2012, order neither appears in the certified record or on the lower court docket. Furthermore, at that time, the trial court no longer had jurisdiction to modify Sanchez's sentence. *See* 42 Pa.C.S. § 5505 (trial court has 30 days to modify or rescind any order); Pa.R.A.P. 1701(b)(3) (trial court lacks authority to proceed further in a matter once a notice of appeal has been filed unless the court expressly grants reconsideration within 30 days of entry of order). Nevertheless, because we are compelled to remand for resentencing, as will be discussed *infra*, the trial court may modify the probationary terms at that time.

timely motion for reconsideration of sentence on December 2, 2011, which the trial court subsequently denied on September 12, 2012.[9]  This appeal followed.[10]

_____

[9] We recognize that Sanchez's notice of appeal was filed more than 120 days after he filed his post-sentence motion.  Pennsylvania Rule of Criminal Procedure 720 provides that when a trial court fails to decide a post-sentence motion within 120 days, "the motion shall be deemed denied by operation of law" and the clerk of courts "shall forthwith enter an order on behalf of the court" and serve a copy on the defendant.  Pa.R.Crim.P. 720(B)(3)(a), (c).

Here, the trial court denied Sanchez's post-sentence motion more than 120 days after the motion was filed.  However, the clerk of courts never entered an order denying the motion by operation of law after the 120-day time period expired.  Therefore, the delay in filing the notice of appeal was caused "by a breakdown in the processes of the court, that is, the clerk of courts' failure to notify him that his motion had been denied by operation of law."  *Commonwealth v. Braykovich*, 664 A.2d 133, 138 (Pa. Super. 1995), *appeal denied*, 675 A.2d 1242 (Pa. 1996).  Accordingly, we conclude Sanchez's appeal was timely filed within 30 days of the date the trial court denied his post sentence motion.  *See id.*

[10] It bears mention the long delay after the appeal was filed in this Court resulted from the trial court's difficulty in securing a copy of the trial transcript.  On March 1, 2013, this Court directed the trial court to file an opinion, pursuant to Pa.R.A.P. 1925(a).  When the trial court failed to comply, this Court, *sua sponte*, stayed the briefing schedule pending receipt of the trial court's opinion.  *See* Order, 4/17/2013.  Thereafter, the trial court ordered Sanchez to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Sanchez complied with the trial court's directive and filed a concise statement on July 13, 2013.  On December 30, 2013, the court filed a preliminary opinion, noting  that, despite repeated attempts, it still had not received a copy of the notes of testimony from Sanchez's trial, and that the court reporter assigned to Sanchez's trial was no longer employed by Lackawanna County.  *See* Trial Court Opinion, 12/30/2013, at 3 n.1.  However, the court indicated it had ordered the reporter to transcribe the testimony by January 3, 2014.  Accordingly, the trial court explained it would supplement its opinion after
*(Footnote Continued Next Page)*

In his first issue on appeal, Sanchez contends the trial court abused its discretion, and violated his constitutional right to confront witnesses against him, when it granted the Commonwealth's motion in *limine*, precluding him from cross-examining the victim with evidence that she had previously lied to police. Specifically, Sanchez sought to admit evidence that, in October of 2008, the victim arrived home late after she had been smoking marijuana. To avoid punishment, she lied to her parents, and told them that an unknown black male kidnapped her and gave her marijuana. The victim later relayed this same story to police, who filed an incident report. However, the victim soon recanted, and admitted that she fabricated the story to avoid getting into trouble. ***See*** Sanchez's Brief at 15.

Sanchez acknowledges that Pennsylvania Rule of Evidence 608(b)(1) generally precludes an attack on a witness's credibility with specific instances of conduct. However, he asserts the evidence in the present case was admissible because (1) it was closely related to the instant charges, particularly the charge of corruption of minors, (2) it had a sufficient indicia of reliability, and (3) it was relevant to establish the victim's "corrupt motive." ***See*** Sanchez's Brief at 15-18.

We begin with our well-established standard of review:

*(Footnote Continued)* ————————————

receiving a copy of the trial transcript. On February 21, 2014, this Court directed the trial court to file a supplemental opinion within 14 days. After three more directives from this Court, the trial court ultimately filed a supplemental opinion on June 20, 2014.

When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal "unless that ruling reflects 'manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.' "

***Commonwealth v. Minich***, 4 A.3d 1063, 1068 (Pa. Super. 2010) (citations omitted).

Pennsylvania Rule of Evidence 608 provides, in relevant part, "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct[.]" Pa.R.E. 608(b)(1).[11] This Court has explained:

[W]henever the accused seeks to offer character evidence for purposes of attacking or supporting the credibility of a victim who testifies, the admissibility of such evidence is governed by Pa.R.E. 608 and proof of specific incidents of conduct by either cross-examination or extrinsic evidence is prohibited.

***Minich***, ***supra***, 4 A.3d at 1072. Further, "[t]his Court has explicitly held that '[t]o refuse to allow a defendant to cross-examine a Commonwealth witness regarding false statements allegedly made in an unrelated case is not an abuse of discretion.'" ***Commonwealth v. Peer***, 684 A.2d 1077,

---

[11] The only stated exception to Rule 608(b)(1) is found in Rule 609, that is, "evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, must be admitted if it involved dishonesty or false statement." Pa.R.E. 609(a). Here, although the victim provided a false report to police, she was not charged with or convicted of any crime.

1083 (Pa. Super. 1996) (citation omitted). *See **Commonwealth v. McLaurin***, 45 A.3d 1131, 1140 (Pa. Super. 2012) (trial counsel was not ineffective for failing to obtain victim's CYS records demonstrating victim "has lied in the past about significant matters" because evidence of "specific instances of the witness' conduct" is not admissible to attack witness' character for truthfulness), *appeal denied*, 65 A.3d 413 (Pa. 2013), *overruled on other grounds by **Commonwealth v. Pander***, 100 A.3d 626 (Pa. Super. 2014) (*en banc*).[12]

In this case, Sanchez sought to present evidence that the victim had made a prior false allegation to police that she had been kidnapped in order to hide her drug use. We agree with the ruling of the trial court that this evidence falls squarely into that prohibited by Rule 608(b)(1). ***See*** Trial Court Opinion, 6/20/2014, at 13. Citing ***Commonwealth v. Peetros***, 535 A.2d 1026 (Pa. 1987), Sanchez argues, however, that the proffered evidence is subject to an exception to the general rule because "it is closely related to the instant charges" and had the "indicia of reliability." Sanchez's Brief at 15, 16. We disagree.

---

[12] The *en banc* Court in ***Pander*** overruled ***McLaurin*** to the extent that the ***McLaurin*** Court summarily dismissed the petitioner's PCRA claim challenging trial counsel's failure to call character witnesses, based solely on the petitioner's failure to attach to his PCRA petition affidavits from the proposed witnesses. ***See Pander***, ***supra***, 100 A.3d at 639-640.

In that case, Peetros and co-defendant Eden were convicted of bribery and related charges after they offered a police officer (Officer Mitsos) $10,000 to turn over to them loan records removed from Peetros's murdered brother's home. **Peetros**, **supra**, 535 A.2d at 1028-1029. Their defense was based upon duresss and/or entrapment. They claimed Officer Mitsos offered to sell them the records, but later turned on them when the deal "went sour." **Id.** at 1033. In support of this defense, the co-defendants sought to introduce evidence that Officer Mitsos had been disciplined by the police department in the past for accepting bribes, which resulted in his demotion from detective to patrolman. **Id.** at 1032. However, the trial court precluded the evidence "on the basis that the disciplinary actions against [Officer] Mitsos had not amounted to a conviction." **Id.**

On appeal, the Supreme Court recognized "the rule has generally been that unless a prior bad act results in a conviction, it cannot be used to impeach a witness." **Id.** However, the Court found the proffered evidence in the case before it laid in a "grey area," because, although Officer Mitsos was not convicted of a crime, "he was subject to a disciplinary proceeding which resulted in his demotion" based upon his acceptance of bribes in the past. **Id.** at 1032-1033. Concluding that the trial court erroneously precluded the evidence, the Supreme Court held:

> Balancing these factors, we must conclude that defendants' right under the Sixth Amendment of the United States Constitution to fully cross-examine this prosecution witness, and their need to do so, outweighs the possible diminution of evidentiary value to which a disciplinary

proceeding might be subject. This is especially true because the subject matter sought to be explored directly relates to the heart of the allegations being made against the defendant. To allow otherwise would permit the accuser to be shielded from having the jury hear evidence of his prior willing participation in the very crimes he now attempts to place upon [the defendants]. Such would place too great a restraint upon the search for truth. Subject to proper presentation, the trial court should have granted [the defendants'] request to discredit Mitsos by means of his prior disciplinary action.

*Id.* at 1034.

Sanchez contends the proffered evidence in this case is similar to that in ***Peetros***. He emphasizes that the evidence has "a sufficient indicia of reliability" because the victim **admitted** she lied to the police about the kidnapping. Further, he asserts the evidence was necessary to support his defense: "[t]he fact that this victim had, in closer temporal proximity than the proffered evidence in ***Peetros***, lied to officials that she was criminally victimized by another person, is certainly a defense necessity in a case where the defense is that the victim is falsely accusing an innocent person." Sanchez's Brief at 17-18.

We find ***Peetros*** distinguishable from the instant matter. First, ***Peetros*** involved evidence of a disciplinary proceeding against a police officer that led to his demotion. That is much more akin to a "conviction" than the victim's prior false allegations in the present case. Furthermore, here, unlike in ***Peetros***, the proffered evidence does **not** "directly relate[] to the heart of the allegations being made against the defendant." ***Peetros***, *supra*, 535 A.2d at 1034. Indeed, in ***Peetros***, the defendants were accused

- 11 -

to bribing an officer who, as the proffered evidence showed, in the past had willingly taken bribes. Here, the proffered evidence demonstrated that the victim had fabricated a story that an unknown black male kidnapped her and gave her marijuana to hide the fact that she willingly took drugs. As the Commonwealth states in its brief, "this is not the equivalent of reporting crimes of sexual abuse against a known perpetrator and testifying against him at trial." Commonwealth's Brief at 12-13. The trial court found that the "evidence of the victim's false statements were unrelated to the allegations against [Sanchez], had limited probative value, and interjected collateral issues into the trial." Trial Court Opinion, 6/20/2014, at 13. We agree, and conclude the trial court did not abuse its discretion in precluding this evidence.[13]

_____

[13] We note Sanchez claims the proffered evidence was "uniquely relevant" to his corruption of minors conviction since that charge was based on that fact that Sanchez had provided the victim with cocaine. Sanchez's Brief at 18 (emphasis omitted). He alleges the victim "had a history of lying about men victimizing her and then giving her controlled substances, in order to cover up her own illicit use of controlled substances[.]" *Id.* We disagree. In the present case, the victim did not disclose the sexual abuse to cover up her own cocaine use. Rather, it was only after she provided details of the sexual abuse, that she also told authorities Sanchez had given her cocaine. Moreover, as the trial court details in its opinion, Sanchez was permitted to cross-examine the victim about her prior drug use in an effort to highlight her failure to promptly report the abuse allegations. In fact, Sanchez questioned the victim specifically why, in October of 2008, when her parents and the police learned of her drug use, she did not disclose the sexual assaults. *See* Trial Court Opinion, 6/20/2014, at 13-17. Accordingly, no relief is warranted.

Sanchez also argues "evidence of a witness' prior bad acts, even if unsupported by a criminal conviction, are permitted to establish the existence of a corrupt motive." Sanchez's Brief at 18. However, the only case cited by Sanchez, **Commonwealth v. Evans**, 512 A.2d 626 (Pa. 1986), involves evidence that a testifying co-conspirator might be biased in favor of the Commonwealth in hopes of favorable treatment for outstanding criminal charges. The Court held that "whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury." *Id.* at 631. Here, the proffered evidence reveals no possible bias on the part of the victim in favor of the Commonwealth. In fact, Sanchez admitted at trial he knew of no reasons why the victim would fabricate the allegations of abuse. N.T., 5/31/2011-6/1/2011, at 201. Accordingly, we conclude the proffered evidence was not admissible to support the victim's possible bias in favor of the Commonwealth, or establish a "corrupt motive," and, therefore, no relief is warranted for Sanchez's first issue.

In his second claim, Sanchez contends the trial court erred when it imposed consecutive sentences for his convictions of IDSI. He argues because both charges arose from the same criminal transaction, *i.e.*, the second sexual assault, "the charges merge for sentencing purposes and should have run concurrent." Sanchez's Brief at 20.

It is unclear whether Sanchez is challenging the discretionary aspects or the legality of his sentence. To the extent he argues the trial court abused its discretion in imposing consecutive sentences, he challenges the discretionary aspects of sentencing. *See Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005) (42 Pa.C.S.A. § 9721 "affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed."). However, because Sanchez neither raised this specific claim in his post-sentence motion, nor included in his brief a statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f),[14] the challenge is waived. *See Commonwealth v. Trinidad*, 96 A.3d 1031 (Pa. Super. 2014) (issue waived for failing to include claim in post-sentence motion and failing to include Rule 2119(f) statement in appellate brief), *appeal denied*, 99 A.3d 925 (Pa. 2014).

To the extent, however, that Sanchez argues his sentences for IDSI should have merged, such a claim implicates the legality of his sentence, and cannot be waived on appeal. *Commonwealth v. Pettersen*, 49 A.3d

---

[14] We note that the Commonwealth has objected to Sanchez's omission of a Rule 2119(f) statement. *See* Commonwealth's Brief at 16. *See also Commonwealth v. Fremd*, 860 A.2d 515, 524 (Pa. Super. 2004) (when the Commonwealth objects to appellant's failure to include Rule 2119(f) statement in brief, this Court is precluded from addressing the claim on appeal), *appeal denied*, 889 A.2d 1213 (Pa. 2005).

903, 911 (Pa. Super. 2012), *appeal denied*, 63 A.3d 776 (Pa. 2013). "The issue is a pure question of law, allowing for plenary review." *Id.*

Pennsylvania law regarding the merger of offenses for sentencing purposes is codified at 42 Pa.C.S. § 9765. Relevant to this case, the statute provides, "[n]o crimes shall merge for sentencing purposes unless the crimes arise **from a single criminal act** and all of the statutory elements of one offense are included in the statutory elements of the other offense." *Id.* (emphasis supplied).

> When considering whether there is a single criminal act or multiple criminal acts, the question is not "whether there was a 'break in the chain' of criminal activity." This issue is whether "the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes."

*Pettersen*, *supra*, 49 A.3d at 912 (citations omitted).

Here, although the IDSI charges both arose from the second incident, which occurred at Sanchez's home, each charge was based upon a separate act. Count IV of the Information charged Sanchez with IDSI because he "performed oral sex on the victim[.]" Information, 12/10/2010, at Count IV. Count V, however, charged Sanchez with IDSI because he "had the victim perform oral sex on him[.]" *Id.* at Count V. Because Sanchez committed "multiple criminal acts beyond that which [was] necessary to establish the bare elements of the additional crime," the trial court properly concluded the

convictions did not merge for sentencing purposes. *Pettersen*, *supra*, 49 A.3d at 912 (citation omitted).[15] *See also Commonwealth v. Robinson*, 931 A.2d 15, 25 (Pa. Super. 2007) (holding appellant's convictions of corruption of minors and indecent assault did not merge for sentencing purposes; although crimes arose from the same criminal episode, the corruption of minors charge was based on appellant's touching of the victim's breasts, and the indecent assault charge was based on appellant's touching of the victim's vagina).

Nevertheless, our review of the record reveals the trial court imposed two mandatory minimum sentences pursuant to 42 Pa.C.S. § 9718, a statute that has been found to be constitutionally infirm in light of the United States Supreme Court's decision in *Alleyne v. United States*, 133 S.Ct. 2151 (U.S. 2013). *See Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014) (*en banc*); *Commonwealth v. Wolfe*, 106 A.3d 800 (Pa. Super. 2014) (applying *Newman* to Section 9718). *See also Commonwealth v. Valentine*, 101 A.3d 801, 811-812 (Pa. Super. 2014) (vacating mandatory

---

[15] We note the case Sanchez relies upon in his brief, *Commonwealth v. Fries*, 523 A.2d 1134 (Pa. Super. 1987), *appeal denied*, 531 A.2d 427 (Pa. 1987), is readily distinguishable. In that case, the defendant, relying a provision of the Sentencing Code, argued that because his offenses arose out of the "same transaction," the trial court should have applied his prior record score of 6 to only one of the offenses, and utilized a prior record score of zero for his remaining offenses. *Id.* at 1137. Here, Sanchez makes no claim regarding the application of his prior record score, which, in any event, was zero.

minimum sentence imposed pursuant to 42 Pa.C.S. §§ 9712 and 9718, even after a jury had determined triggering factors, because the unconstitutional subsections of the statutes were not severable from the remainder of the statute). Although Sanchez did not contest the imposition of the mandatory minimum sentences on appeal, "a challenge to a sentence premised upon *Alleyne* … implicates the legality of the sentence and cannot be waived on appeal." **Newman**, *supra*, 99 A.3d at 90. Moreover, this Court may address the legality of a defendant's sentence *sua sponte*. **Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa. Super. 2013) (*en banc*), *appeal denied*, 95 A.3d 277 (Pa. 2014).

In **Wolfe**, *supra*, a panel of this Court applied the reasoning of *en banc* Court in **Newman**, *supra*, and its progeny, to conclude that the mandatory minimum provisions in Section 9718 are facially unconstitutional. **Wolfe**, *supra*, 106 A.3d at 805. Although the **Wolfe** Court recognized the fact triggering the mandatory minimum sentence, *i.e.*, that the victim was less than 16 years of age, was actually "an element within the subsection of the IDSI statute under which [the defendant] was convicted[,]" the Court found it was, nonetheless, bound by the *en banc* decision in **Newman**, which held "that mandatory minimum sentence statutes in Pennsylvania of this format are **void in their entirety**." *Id.* at 805, 806 (emphasis supplied). The Court concluded, "[a]s Section 9718 is indistinguishable from

the statutes struck down in **Newman** and **Valentine**, we are constrained to conclude that Section 9718 is also facially void." **Id.** at 806.

Therefore, although we conclude the issues raised by Sanchez on appeal are meritless, we are constrained to vacate the judgment of sentence, and remand for resentencing in light of the erroneous imposition of the mandatory minimum sentences imposed pursuant to Section 9718.

Judgment of sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/18/2015